UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| YANICK JACQUES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 13-10520-DJC |
| | ) |
| UNITED STATES OF AMERICA, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## DECLARATION OF JILL STEINBERG

1. I am an Assistant Regional Counsel in Region I (Boston, Massachusetts), Office of the General Counsel, Department of Health and Human Services (the "Department"). I am familiar with the official records of administrative tort claims maintained by the Department and its Claims Office.

2. The documents attached as <u>Attachment 1</u> are copies of the Standard Form ("SF") 95 and attachments comprising the administrative claim of Yanick Jacques. As indicated by the date stamp on the SF-95, these documents were received Department's Claims Office on May 1, 2012. <u>Attachment 1</u> represents a true and correct copy of the administrative claim received for Ms. Jacques on May 1, 2012.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.

Dated at Boston, Massachusetts, this 2nd day of July, 2014.

/s/ Jill Steinberg
Jill Steinberg
Assistant Regional Counsel
Office of the General Counsel, Region I
Department of Health and Human Services

# Attachment 1

2012-0318

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of the form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code) |
|---|---|
| U.S. Department of Health and Human Services<br>330 Independence Ave., S.W.<br>Washington, DC 20201 | Yanick Jacques<br>247 Gallivan Blvd<br>Dorchester, MA  02124<br><br>Scott M. Heidorn, Esq.<br>Bergstresser & Pollock, LLC<br>52 Temple Place<br>Boston, MA 02111 |

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY  ☒ CIVILIAN | 4. DATE OF BIRTH<br>[redacted] | 5. MARITAL STATUS<br>Single | 6. DATE AND DAY OF ACCIDENT<br>May 2010 through April 2011 | 7. TIME (A.M. or P.M.) |
|---|---|---|---|---|

**8. Basis of Claim** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)

Yanick Jacques was a patient at Codman Square Health Center, where her primary care providers from Mark Beaumont, MD. Among other things, Ms. Jacques has a history of mental health issues, for which Dr. Beaumont treated her. Dr. Beaumont violated boundaries with Ms. Jacques, including sexual relations with his patient in various locations, including in examination rooms at Codman. In November 2008 Dr. Beaumont reported concerns about boundary violations with this patient to others at Codman, including his medical director, Phillip Severin, MD. After he reported these concerns Codman's Director of Operations, Jo-Ann Winbush, transferred Ms. Jacques care to another care provider. However, in April 2009 Ms. Beaumont began being treated by Dr. Beaumont again, including for gynecological treatment. Dr. Beaumont began having sexual relations with Ms. Jacques in May 2010 and continued through April 2011. Eventually Dr. Beaumont was reported to the Massachusetts Board of Registration in Medicine, which conducted an investigation and revoked his license (attached). Ms. Jacques seeks compensation from Dr. Beaumont, and from Dr. Severin and Ms. Winbush who were concerned about boundary violations and, after an initial transfer away from Dr. Beaumont, allowed him to resume treating Ms. Jacques.

**9. PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code)

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

**10. PERSONAL INJURY/WRONGFUL DEATH**

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

As a result of the conduct described above, plaintiff has suffered significant physical and emotional injuries including severe depression, alcoholism, stomach upset, difficulty sleeping, headaches, etc. She has lost significant self-confidence and has lost faith in care providers, which makes it more difficult for her to treat for these symptoms.x

**11. WITNESSES**

| NAME | ADDRESS (Number, street, city, State, and Zip Code) |
|---|---|
| Mark Beaumont, MD<br>Philipp Severin, III, MD<br>Jo-Ann Winbush | Codman Square Health Center<br>637 Washington Street<br>Boston, Massachusetts |

**12. AMOUNT OF CLAIM (In dollars)**

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY<br>3,000,000.00 | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.)<br>3,000,000.00 |
|---|---|---|---|

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.)<br>[signature] attorney | 13b. Phone number of signatory<br>617-682-9211 | 14. DATE OF CLAIM<br>4/30/12 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of $2,000 plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

95-109<br>Previous editions not usable.

NSN 7540-00-634-4046

STANDARD FORM 95 (Rev. 7-85) (EG)<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2

# Bergstresser & Pollock LLC
52 Temple Place
Boston, MA 02111

Clyde D. Bergstresser
clyde@bergstresser.com

Russell X. Pollock*
russ@bergstresser.com

Scott M. Heidorn
scott@bergstresser.com

*Also admitted in NY, NJ, CT, RI and NH

Karen M. Reilly, Nurse - Paralegal
karen@bergstresser.com

TEL (617) 682-9211
FAX (617) 451-1070
www.bergstresser.com

2012-0318

April 30, 2012

**VIA OVERNIGHT MAIL**

U.S. Department of Health and Human Services
Office of the General Counsel General Law Division
Department of Health & Human Services
330 Independence Ave., S.W.
Mail Stop: Capitol Place
Washington, DC 20201

U.S. Department of Health and Human Services
Office of the General Counsel General Law Division
Department of Health & Human Services
JFK Federal Building, Room 2250
Government Center
Boston, MA 02203

Dear Sir or Madam:

    As stated in the enclosed Attorney's Affidavit, this firm represents Yanick Jacques in this claim pursuant to the Federal Tort Claims Act (FTCA) for compensation as a result of physical and emotional injuries suffered by Yanick Jacques. As described in the attached Form 95 and documents from the Massachusetts Board of Registration in Medicine, Ms. Jacques was a victim of significant boundary violations by her primary care provider, Mark Beaumont, MD, at Codman Square Health Center (Codman), which describes itself as a "Section 330 Community Health Center." Although his supervisors at Codman were aware of and concerned about Dr. Beaumont's relationship with this patient, they were negligent in failing to take action to prevent him from harming his patient.

    To briefly summarize Ms. Jacques has a history of mental illness stemming from childhood trauma including sexual molestation as a young child and rape when she was a teenager. She struggled for years with mental health issues and has had several inpatient admissions to hospital psychiatric units.



Beginning in approximately November 2007 Mark Beaumont, MD became Ms. Jacques' primary care provider and treated her mental health issues. Dr. Beaumont became unusually close with Ms. Jacques and appeared to be romantically interested in her. In late November 2008, Dr. Beaumont informed a behavioral health provider at Codman that he had concerns with his medical management of Ms. Jacques because of issues with boundaries. He met with Dr. Severin, the medical director at Codman, about these concerns and shortly thereafter Ms. Jacques' care was transferred from Dr. Beaumont to another provider. After Dr. Beaumont met with Dr. Severin, Jo-Ann Winbush, Director of Operations at Codman, met with Ms. Jacques and told her she would need to transfer her care to another physician and a therapist at Codman because of concerns about boundary violations.

After Dr. Beaumont met with Dr. Severin and Jo-Ann Winbush met with Ms. Jacques, her care was in fact transferred. However, beginning in April 2009 Dr. Beaumont again began to treat Ms. Jacques at Codman, and continued to do so through April 2011. Beginning in or about May 2010 Dr. Beaumont began engaging in significant boundary violations with Ms. Jacques, including sexual relations with her during exams at Codman. In May 2011 Ms. Jacques informed Dr. Beaumont that she was pregnant. Dr. Beaumont asked her to terminate the pregnancy, which she did not want to do.

On May 24, 2011, without discussing it with her, Dr. Beaumont called in a prescription for misoprostol for Ms. Jacques in order to cause a termination of her pregnancy. Ms. Jacques did not learn that this medication had been prescribed for her or that it would cause an abortion until her pharmacist explained it to her. Although Ms. Jacques did not take the misoprostol this incident caused her significant physical and emotional injury. She later learned that her pregnancy was likely ectopic and she was having a miscarriage. Shortly thereafter she was admitted to the Psychiatric Unit at Beth Israel Hospital.

Ms. Jacques reported Dr. Beaumont's conduct to the Massachusetts Board of Registration in Medicine, which prosecuted him and found that his conduct was negligent. The Board revoked his medical license.

Dr. Beaumont's negligence includes, without limitation, the following:

1. Failing to appreciate boundary violations of his patient;
2. Failing to appreciate his own boundary violations;
3. Engaging in boundary violations with a patient;
4. Engaging in sexual relations with a patient;
5. Failing to appreciate the harm that the boundary violations would cause his patient;
6. Prescribing medication for his patient without discussing it with her; and
7. Failing to educate his patient about a medication he had prescribed her.



In addition, Dr. Severin and Ms. Winbush were negligent in failing to take adequate steps to ensure that Dr. Beaumont did not continue to treat Ms. Jacques after they became aware that there was a boundary violation concern. Although it appears that they took steps to transfer Ms. Jacques' care to another provider for a short period of time, they failed to take steps to prevent Dr. Beaumont from resuming treatment of Ms. Jacques a mere five months later. Ms. Jacques has a history of mental illness and was thus exceptionally susceptible to the harm caused by Dr. Beaumont. Dr. Severin and Ms. Winbush should have taken steps to prevent him from ever treating Ms. Jacques at their facility again.

On behalf of Ms. Jacques I make a claim of $3,000,000. Ms. Jacques was an exquisitely vulnerable individual when she began treating with Dr. Beaumont. She suffered sexual abuse and rape as a child and has been diagnosed with severe depression and bipolar disorder, and has a history of psychiatric hospital admission and suicidal ideation. Dr. Beaumont took advantage of his highly susceptible patient and violated basic sacrosanct tenets of medicine, sacrificing Ms. Jacques for his own wrongful sexual and emotional needs. As a result of his negligence, and Dr. Severin's and Ms. Winbush's negligent failure to recognize and prevent his misconduct, Ms. Jacques' mental health has deteriorated. She has become significantly more depressed, has had further inpatient psychiatric admission, and has begun drinking alcohol excessively. She has suffered from flashbacks, headaches, nausea and difficulty sleeping. To make matters worse she has found it very difficult to seek psychiatric treatment because she has lost faith in the medical community.

Thank you for attention to this matter. If I can answer any questions or provide any further information please do not hesitate to contact me.

Very Truly Yours,

Scott M. Heidorn

Encl.

COMMONWEALTH OF MASSACHUSETTS

Middlesex, SS.                                                    Board of Registration in Medicine

Adjudicatory Case No.   2012-005

|                          |   |
|--------------------------|---|
| In the Matter of         | ) |
|                          | ) |
| MARK BEAUMONT, M.D.      | ) |
|                          | ) |

### CONSENT ORDER

Pursuant to G.L. c. 30A, § 10, Mark Beaumont, M.D. (Respondent) and the Board of Registration in Medicine (Board) (hereinafter referred to jointly as the "Parties") agree that the Board may issue this Consent Order to resolve the above-captioned adjudicatory proceeding. The Parties further agree that this Consent Order will have all the force and effect of a Final Decision within the meaning of 801 CMR 1.01(11)(d). The Respondent admits to the findings of fact specified below and agrees that the Board may make the conclusions of law and impose the sanction set forth below in resolution of investigative Docket No. 11-223.

### Findings of Fact

1. The Respondent was born on ▮▮▮▮▮▮▮▮ He has been licensed in Massachusetts since 2005 under certificate number 225838. He is certified by the American Board of Family Medicine. Until June 30, 2011, he was affiliated with Codman Square Health Center (Codman) and Boston Medical Center (BMC).

2. On June 30, 2011, the Respondent entered a Voluntary Agreement Not to Practice and it was ratified by the Board on July 20, 2011.

3. Patient A, a female, was born in 1974.

4. Patient A has a history of mental health issues including depression and anxiety.

5. Patient A has sought mental health treatment including medication and in-patient hospitalization.

6. From November 2007 to November 2008, Dr. Beaumont was Patient A's primary care provider at Codman.

7. From November 2007 to November 2008, Dr. Beaumont provided mental health counseling for Patient A.

8. In late November 2008, the Respondent documented that he informed a behavioral health provider at Codman that he had concerns regarding the medical management of Patient A. The Respondent documented that Patient A often crossed boundaries —e.g. came to Codman without an appointment, had the expectation that the Respondent would treat her and no one else, and spoke to the Respondent in church. The Respondent document in Patient A's medical record that he had concerns of safety for his family. The Respondent sought advice from the Codman medical director regarding the Respondent's issues with Patient A.

9. On November 24, 2008, Patient A's care was transferred to another Codman provider.

10. From April 2009 to April 2011, the Respondent saw Patient A for six gynecological visits at Codman.

11. In May 2010, the Respondent began a sexual relationship with Patient A.

12. From May 2010 to April 2011, the Respondent engaged in sexual relations with Patient A at her home, at Codman, at BMC, and at a hotel.

13. In May 2011, Patient A informed the Respondent that she was pregnant.

14. The Respondent asked Patient A to terminate the pregnancy.

15. On May 24, 2011, the Respondent called in a prescription for misoprostol for Patient A without informing Patient A.

16. The Respondent's purpose in prescribing misoprostol for Patient A was to cause a termination of Patient A's pregnancy.

17. While at the pharmacy filling a prenatal vitamin prescription from her obstetrician, Patient A was informed by the pharmacist that there was a prescription for misoprostol for her.

18. The pharmacist told Patient A that misoprostol would terminate her pregnancy.

19. Patient A went to Codman and informed the Respondent that she would not use the misoprostol.

20. On June 2, 2011, Patient A went to Carney Hospital. Patient A had a blood pregnancy test performed and the result was positive. Patient A had a pelvic ultrasound performed but no pregnancy was seen. Patient A was informed that she was having a miscarriage.

21. On June 9, 2011, the Respondent accompanied Patient A to Beth Israel Deaconess Medical Center (BIDMC).

22. On June 10, 2011, the Respondent accompanied Patient A to BIDMC.

23. On June 10, 2011, Patient A was informed by the BIDMC providers that it was likely that her pregnancy was ectopic.

24. The BIDMC providers recommended that Patient A receive an injection of Methotrexate to treat a likely ectopic pregnancy.

25. Patient A told BIDMC staff, in the Respondent's presence that, if there was any chance that her pregnancy was viable, she wanted to have the baby.

26. While at BIDMC, Patient A sought medical advice and personal support from the Respondent.

27. The Respondent advised Patient A to receive Methotrexate.

28. Patient A consented to Methotrexate treatment.

### Conclusion of Law

A. The Respondent has violated G.L. c. 112, § 5, ninth par. (c) and 243 CMR 1.03(5)(a)3 by engaging in conduct that places into question the Respondent's competence to practice medicine including practicing medicine fraudulently.

B. The Respondent has violated G.L. c. 112, § 5, ninth par. (c) and 243 CMR 1.03(5)(a)3 by engaging in conduct that places into question the Respondent's competence to practice medicine including gross misconduct in the practice of medicine.

C. The Respondent has violated 243 CMR 1.03(5)(a)10 by practicing medicine deceitfully, or engaging in conduct that has the capacity to deceive or defraud.

D. The Respondent has violated 243 CMR 1.03(5)(a)18 by committing misconduct in the practice of medicine.

E. The Respondent lacks good moral character and has engaged in conduct that undermines the public confidence in the integrity of the medical profession. *See Levy v. Board of Registration in Medicine*, 378 Mass. 519 (1979); *Raymond v. Board of Registration in Medicine*, 387 Mass. 708 (1982).

### Sanction and Order

The Respondent's license is hereby REVOKED. Said revocation is retroactive to June 30, 2011. This sanction is imposed for Docket No. 11-223 and Conclusions of Law A, B, C, D, and E.

### Execution of this Consent Order

The Respondent shall provide a complete copy of this Consent Order with all exhibits and attachments within ten (10) days by certified mail, return receipt requested, or by hand delivery to the following designated entities: any in- or out-of-state hospital, nursing home, clinic, other licensed facility, or municipal, state, or federal facility at which the Respondent practices medicine; any in- or out-of-state health maintenance organization with whom the Respondent has privileges or any other kind of association; any state agency, in- or out-of-state, with which the Respondent has a provider contract; any in- or out-of-state medical employer, whether or not the Respondent practices medicine there; the state licensing boards of all states in which the Respondent has any kind of license to practice medicine; the Drug Enforcement Administration Boston Diversion Group; and the Massachusetts Department of Public Health, Drug Control Program. The Respondent shall also provide this notification to any such designated entities with which the Respondent becomes associated during the existence of this revocation. The Respondent is further directed to certify to the Board within ten (10) days that the Respondent has complied with this directive.

The Board expressly reserves the authority to independently notify, at any time, any of the entities designated above, or any other affected entity, of any action it has taken.