UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| YANICK JACQUES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 13-10520-DJC |
| | ) |
| UNITED STATES OF AMERICA, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**JOINT REPLY OF DEFENDANTS UNITED STATES
AND CODMAN SQUARE HEALTH CENTER, INC.
TO PLAINTIFF'S AND DR. BEAUMONT'S
<u>RESPONSES TO THE JOINT STATEMENT OF FACTS</u>**

The defendants United States and Codman Square Health Center, Inc. ("Codman") jointly submit this reply to (a) the Plaintiff's Response To the Joint Statement of Defendants United States of America and Codman Square Health Center, Inc. of Material Facts As To Which There Is No Genuine Issue To Be Tried (Dkt #52), and (b) the Statement of Facts In Support of the Defendant's Mark Beaumont, M.D's Opposition to the Defendants' United States of America's and Codman Square Health Center, Inc.'s Motions For Summary Judgment (Dkt #56).

**A.      Joint Reply to Plaintiff's Response to the Joint Statement of Defendants United States of America and Codman Square Health Center, Inc. of Material Facts as to Which There Is No Genuine Issue to Be Tried (Dkt #52)**

The United States and Codman address below those paragraphs of the original Joint Statement which the plaintiff has denied.

6.      In many of the 2007 through 2008 visits, Dr. Beaumont provided Ms. Jacques some mental health counseling, in addition to addressing her physical complaints.  (E.g., Exhibit 2 (Beaumont) at 13:6 – 14:7.)  Dr. Beaumont has never been trained in psychiatry, so he gave her basic counseling that included advising her on deep breathing exercises; going for a walk; talking to a friend or family member as a way to manage her anxiety; and reviewing a checklist of questions regarding safety.  (*Id*.; and *id*. at 110:21 – 112:2, 112:21 – 113:23.)  He did not attempt psychotherapy.  (*Id*. at 113:9-10.)

      **DENIED.**  First, the last sentence is a misrepresentation of Dr. Beaumont's testimony.  Dr. Beaumont stated that he never attempted "psychoanalysis," which is very different from psychotherapy.  Second, as discussed in more detail in Plaintiff's Statement below, defendant is minimizing the counseling Dr. Beaumont provided. He engaged in over a year of therapy with

Ms. Jacques, including focusing on her severe history of sexual abuse and multiple suicide attempts.  He diagnosed her with PTSD and Depression and wrote many prescriptions for psychiatric medication.

  **REPLY**.  Except for the second sentence, the Court should disregard plaintiff's denial, which states nothing that is inconsistent with the Joint Statement of Fact.


8.      Dr. Beaumont had no romantic feelings toward Ms. Jacques at this time.  (Exhibit 2 (Beaumont) at 31:24 – 32:25, 48:12-15, 73:13-17.)  For that reason, he did not tell anyone that he had romantic feelings toward Ms. Jacques at this time.  (*Id*. at 48:12-15, 73:13-17.)

  **DENIED.**  As described by plaintiff's expert, Jerry Blaine, JD, Dr. Beaumont was unaware of the feelings that developed between himself and Ms. Jacques during their therapy because he has not been trained about the phenomena of transference and countertransference, but the foundation for the boundary violations that later occurred were formed during the therapy.  Exhibit 2, Affidavit of Jerry Blaine, MD, at Pages 1-2.

  **REPLY**:  The Court should disregard plaintiff's denial for two reasons.  First, the "affidavit" of plaintiff's expert, Jerry Blaine, MD, does remotely say what plaintiff asserts it says.  Second, even if it did, Dr. Blaine has no qualifications or factual basis for opining about Dr. Beaumont's feelings toward plaintiff at the time in question, when the only factual evidence flatly contradicts any such opinion.  Finally, the Court should give little, if any weight to Dr. Blaine's opinions generally because the United States propounded an unambiguous interrogatory requesting the substance of any expert testimony, yet plaintiff failed to disclose it until now, long after the close of this phase of discovery.  *See* Exhibit 3 of Exhibits to Plaintiff's Opposition to Defendants' Motion For Summary Judgment ("Plf's Ex."), Interrogatory No. 19.  The United States and Codman have had no opportunity to question Dr. Blaine on his opinions, and consideration of the affidavit now would be unfair.


12.      After the November 24, 2008, session, Dr. Beaumont did not see Ms. Jacques again until March 12, 2009, when Ms. Jacques came to Codman for an Urgent Care visit.  (Exhibit 3 (Joseph Decl.), Attachment A.)  An Urgent Care visit is when a patient arrives at the health center for an unscheduled "walk-in" visit.  (Exhibit 2 (Beaumont) at 60:14-22.)  The patient is brought in to an examination room, and the health care provider does not know who the patient is until the provider walks into the examination room.  (*Id*. at 60:17 – 61:11)  It was happenstance that Dr. Beaumont saw Ms. Jacques.  (*Id*. at 61:12 – 62:10.)

  **DENIED.**  As explained below (See Plaintiff's Statement at ¶ 47) Dr. Beaumont would have Ms. Jacques call Codman to schedule a visit, during which time they would have sexual relations.  Dr. Beaumont told Ms. Jacques that he would not make a record of their visits.

  **REPLY**.  Plaintiff's denial is flatly inconsistent with the record and should be rejected.  The plaintiff's denial appears to suggest that her vague statement about having sexual relations at Codman creates a genuine issue of fact whether Dr. Beaumont and plaintiff had sexual relations

between November 2008 and March 12, 2009 (or perhaps at the time of the March 12, 2009, visit). Yet plaintiff's own Complaint alleges that, "[i]n *May 2010* Dr. Beaumont *began* engaging in sexual relations with the plaintiff in various places . . . ." (Emphasis added.) Plaintiff's Answer to Interrogatory No. 3 states, "We had sexual relations between May 2010 and April 2011…." Plf's Ex. 3. At her deposition the plaintiff gave the following testimony:

> Q     And during 2009, did you have any romantic feelings toward Dr. Beaumont?
>
> A     No.
>
> Q     Do you know whether he had any romantic feelings toward you?
>
> A     In 2009?
>
> Q     Yeah.
>
> A.    I don't know.

Plf's Ex. 6 (Jacques) at 42:3-10.

> Q     Your relationship started in what month of 2010?
>
> A     Well, --
>
> Q     Your sexual relationship.
>
> A     Yeah, the sexual part, the sexual part started in May of 2010.

*Id*. at 46:17-21. Finally, the plaintiff admits without qualification paragraph 23 of the Joint SOF, which states in part, "Two or three weeks before the May 27, 2010, office visit, Dr. Beaumont and Ms. Jacques had their *first* sexual encounter." (Emphasis added.)

13.     At the March 12, 2009, Urgent Care visit, Dr. Beaumont did not express any romantic feelings towards Ms. Jacques. (Exhibit 2 (Beaumont) at 62:20 – 63:2.) He did not provide her any mental health counseling at that visit. (*Id*. at 121:13-24.)

  **DENIED.** As explained below (See Plaintiff's Statement at ¶ 47 Dr. Beaumont would have Ms. Jacques call Codman to schedule a visit, during which time they would have sexual relations. Dr. Beaumont told Ms. Jacques that he would not make a record of their visits.

  **REPLY**: The Court should disregard plaintiff's denial for the reasons stated in Reply No. 12 above.

14.     Dr. Beaumont next saw Ms. Jacques on April 23, 2009.  (Exhibit 3 (Joseph Decl.), Attachment A; Exhibit 2 (Beaumont) at 67:9-21.)  Ms. Jacques had called the clinic and asked to be seen by Dr. Beaumont.  (Exhibit 2 (Beaumont) at 67:22-25.)  Dr. Beaumont did not have any input into whether she would be allowed to see him.  (*Id.* at 68:1-3.)  He was surprised to see her, and he expressed his concern to his medical assistant.  (*Id.* at 68:4 – 70:21.)  Dr. Beaumont also expressed his concerns to Ms. Winbush and received reassurance that Ms. Jacques would be reassigned.  (*Id.* at 70:25 – 71:11; and see Exhibit 6 (Winbush) at 52:11 – 57:6.)  Dr. Beaumont agreed to see Ms. Jacques at that time, and he told Ms. Jacques that she would need to see a new primary care provider.  (Exhibit 2 (Beaumont) at 70:25 – 71:20.)  He did not provide her with any mental health counseling that day.  (*Id.* at 122:3-8.)

   **DENIED.**  As explained below (See Plaintiff's Statement at ¶ 47 Dr. Beaumont would have Ms. Jacques call Codman to schedule a visit, during which time they would have sexual relations.  Dr. Beaumont told Ms. Jacques that he would not make a record of their visits.

   **REPLY**:  The Court should disregard plaintiff's denial for the reasons stated in Reply No. 12 above.


15.     Up to the time of the April 23, 2009, office visit, Dr. Beaumont did not say anything to anyone at Codman that might have alerted them that he had romantic feelings towards Ms. Jacques, because he had no romantic feelings toward her.  (Exhibit 2 (Beaumont) at 73:13-17.)

   **DENIED.**  Dr. Severin should have been alerted that Dr. Beaumont would have romantic feelings towards Ms. Jacques after Dr. Beaumont reported his concerns on or around November 24, 2008, and should have taken steps to make sure he did not treat Ms. Jacques anymore and explained the concepts of Transference and Countertransference to Dr. Beaumont so that he understood that the feelings he developed towards Ms. Jacques flowed from the therapy and should not be acted upon.  Exhibit 2, Affidavit of Jerry Blaine, MD, at Pages 2-3.

   **REPLY**:  The Court should disregard plaintiff's denial for two reasons.  First, the denial does not raise a genuine issue, or even address, the specific statements made in No. 15, which are supported by competent evidence and are undisputed.  *See also* Exhibit 5 to the Defendant Beaumont's Statement of Facts (Deposition of Carmen Cruz) at 55:3 – 57:23 (regarding the November 24, 2008, meeting).  Instead, the plaintiff's denial presents inappropriate argument about the broader issue of foreseeability.  Second the Court should disregard plaintiff's broader argument and the affidavit of Dr. Blaine, for the reasons stated in Part III of the United States' Reply Memorandum.  Moreover, the Affidavit of Jerry Blaine, MD, does not say, as asserted in plaintiff's denial, that "Dr. Severin should have been alerted that Dr. Beaumont would have romantic feelings towards Ms. Jacques after Dr. Beaumont reported his concerns on or around November 24, 2008. . . ."  Instead, Dr. Blaine merely states, "It should have been anticipated that Ms. Jacques, given her strong feelings for Dr. Beaumont would persist in trying to see Dr. Beaumont.  Given his limited training and experience in these circumstances any further contact would foreseeably place her at great risk of boundary violations."  This simply acknowledges that the *plaintiff* was guilty of boundary violations and that the *plaintiff* might continue to exhibit boundary violations if she continued to be treated by Dr. Beaumont.  Dr. Blaine does not opine

that it was foreseeable that Dr. Beaumont would pursue a sexual relationship.  Even if Dr.
Blaine's affidavit were interpreted as saying that, such an opinion would be inadmissible.  Dr.
Blaine's affidavit provides no statement of experience, training, or expertise, and no statement of
facts that would support an expert opinion on the foreseeability of Dr. Beaumont's sexual
conduct.


16.     After the April 23, 2009, office visit, Ms. Jacques saw other Codman providers for her
care.  Specifically, during the period between April 23, 2009, and May 27, 2010, Ms. Jacques
had 12 visits with providers other than Dr. Beaumont in the Internal Medicine and Family
Medicine departments at Codman.  (Exhibit 3 (Joseph Decl.), Attachment A.)  Her primary care
provider was Dr. Connolly.  (Exhibit 5 (Jacques) at 40:3 – 42:2.)

  **DENIED.**  As explained below (See Plaintiff's Statement at ¶ 47 Dr. Beaumont would have
Ms. Jacques call Codman to schedule a visit, during which time they would have sexual
relations.  Dr. Beaumont told Ms. Jacques that he would not make a record of their visits.

  **REPLY**:  The Court should disregard plaintiff's denial for the reasons stated in Reply No. 12
above.


17.     After the April 23, 2009, office visit, Dr. Beaumont did not provide any medical
treatment to Ms. Jacques until 13 months later, at an office visit on May 27, 2010.  (Exhibit 2
(Beaumont) at 74:23 – 75:15.)  He did speak to her by telephone between five and 10 times when
she would call his pager to ask questions about the care that the residents were providing her.
(*Id.* at 76:10 – 77:16.)

  **DENIED.**  As explained below (See Plaintiff's Statement at ¶ 47 Dr. Beaumont would have
Ms. Jacques call Codman to schedule a visit, during which time they would have sexual
relations.  Dr. Beaumont told Ms. Jacques that he would not make a record of their visits.

  **REPLY**:  The Court should disregard plaintiff's denial for the reasons stated in Reply No. 12
above.


18.     During the period between the April 23, 2009, visit and the May 27, 2010, visit, Dr.
Beaumont did not consider himself to be Ms. Jacques's doctor, and he made that clear to Ms.
Jacques.  (Exhibit 2 (Beaumont) at 77:21 – 78:22.)

  **DENIED.**  As explained below (See Plaintiff's Statement at ¶ 47 Dr. Beaumont would have
Ms. Jacques call Codman to schedule a visit, during which time they would have sexual
relations.  Dr. Beaumont told Ms. Jacques that he would not make a record of their visits. In
addition, Dr. Beaumont, or somebody else from Codman on his behalf, sent plaintiff a letter
identifying Dr. Beaumont as her Primary Care Physician.

**REPLY**:  The Court should disregard plaintiff's denial for the reasons stated in Reply No. 12 above.  With respect to the last sentence of plaintiff's denial, regarding a letter, the statement is unsupported by any citation or evidence.  *See* LR 56.1.  Moreover, plaintiff provides no information about the date, author, or content of the purported letter.  Accordingly, the statement should be disregarded.

27.     Prior to August 2010, they did not have sexual relations at Codman.  (Exhibit 7, Answer No. 2; Exhibit 2 (Beaumont) at 94:22-17; *see* Exhibit 5 (Jacques) 56:1-10.)

**DENIED.**  As explained below (See Plaintiff's Statement at ¶ 47) Dr. Beaumont would have Ms. Jacques call Codman to schedule a visit, during which time they would have sexual relations.  Dr. Beaumont told Ms. Jacques that he would not make a record of their visits.  Ms. Jacques does not recall when these relations occurred.

**REPLY**:  The United States and Codman submit that the plaintiff's denial is simply not plausible and does not raise a genuine issue of fact, given (a) Dr. Beaumont's clearly stated memory of the first incident of sexual relations at Codman and the circumstances giving rise to it; [1] (b) the plaintiff's inability to remember any time frame whatsoever for that incident; and (c) the common sense conclusion that such an occurrence would be memorable.

28.     Their first sexual encounter at Codman was in August 2010.  (Exhibit 2 (Beaumont) at 94:22 – 95:20.)  This was unrelated to any medical visit with Dr. Beaumont.  (*Id*. at 96:8-19.)

**DENIED.**  As explained below (See Plaintiff's Statement at ¶ 47 Dr. Beaumont would have Ms. Jacques call Codman to schedule a visit, during which time they would have sexual relations.  Dr. Beaumont told Ms. Jacques that he would not make a record of their visits.  Ms. Jacques does not recall when these relations occurred.

**REPLY**:  See Reply No. 27 above.  Further, the medical record is consistent with Dr. Beaumont's testimony.  Dr. Beaumont testified that the first incident of sexual relations at Codman occurred in August 2010 and that the plaintiff was at Codman to see another provider and stopped in to see him.  Plf's Ex. 5 at 94-96.  The medical record shows that the plaintiff saw two other providers that month, on August 12, 2010, and August 19, 2010, and indicates no medical appointment with Dr. Beaumont.  Ex. 3 to Joint SOF.

34.     The Codman medical record indicates that after the May 27, 2010, office visit (when Dr. Beaumont inserted an IUD), through the end of 2010, Ms. Jacques had one other medical appointment with Dr. Beaumont.  (Exhibit 3 (Joseph Decl.) and Attachment A thereto.)  This was an October 1, 2010, Urgent Care visit.  (*Id*.; Exhibit 2 (Beaumont) at 101:6-21.)  Dr. Beaumont had no role in making this appointment; he first learned she was there when he walked

---

[1]  The second citation in the original Joint SOF No. 27, to Exhibit 2 (Beaumont) at 94:22-17, was inadvertently incomplete.  The citation should read 94:22 – 95:17.

into the examination room.  (*Id*.)  He did not have sexual relations with the plaintiff during this visit.  (*See* Exhibit 7, Answer No. 2; Exhibit 2 (Beaumont) at 184:7 – 186:25.)  Ms. Jacques has no belief whether sexual relations occurred during this visit.  (Exhibit 5 (Jacques) at 75:15 – 76:5.)

    **DENIED.**  As explained below (*see* Plaintiff's Statement at ¶ 47) Dr. Beaumont would have Ms. Jacques call Codman to schedule a visit, during which time they would have sexual relations.  Dr. Beaumont told Ms. Jacques that he would not make a record of their visits.  Ms. Jacques does not recall when these relations occurred.

    **REPLY**:  The United States and Codman submit that the plaintiff's testimony to the effect that "Dr. Beaumont would have Ms. Jacques call Codman to schedule a visit . . . [etc.]" lacks specificity sufficient to raise a genuine issue of fact regarding the specific evidence cited in the Joint SOF.

37.     According to the Codman medical record, Ms. Jacques had three medical visits with Dr. Beaumont during 2011.  (Exhibit 3 (Joseph Decl.), Attachment A.)  The first, on February 3, 2011, was an Urgent Care visit that was converted to a regular visit.  (*Id*.; Exhibit 2 (Beaumont) at 103:16 – 106:10.)  Ms. Jacques was treated for dehydration with intravenous fluids, and her IUD was removed.  (*Id*.)  Dr. Beaumont and Ms. Jacques did not have sexual relations at the time of this visit.  (*Id*. at 106:3-7; Exhibit 5 (Jacques) at 76:11 – 78:20.)  According to Ms. Jacques, they did have sexual relations at her house afterwards.  (Exhibit 5 (Jacques) at 78:18 – 79:1.)

    **DENIED.**  As explained below (*see* Plaintiff's Statement at ¶ 47) Dr. Beaumont would have Ms. Jacques call Codman to schedule a visit, during which time they would have sexual relations.  Dr. Beaumont told Ms. Jacques that he would not make a record of their visits. Ms. Jacques does not recall when these relations occurred.

    **REPLY**:  The United States and Codman submit that the plaintiff's testimony referenced in her denial lacks specificity sufficient to raise a genuine issue of fact regarding the specific evidence cited in the Joint SOF.

46.     Dr. Philip Severin, the medical director at Codman and Dr. Beaumont's supervisor, had no knowledge or suspicion that Dr. Beaumont had any romantic feelings towards Ms. Jacques or that he might engage in a sexual relationship with her.  (Exhibit 10 (Declaration of Philip Severin, MD).)  He first learned of the sexual relationship in June 2011 when the Massachusetts Board of Registration in Medicine ("BORM") requested information from Codman.  (*Id*.)

    **DENIED.**  Dr. Severin should have been alerted that Dr. Beaumont would have romantic feelings towards Ms. Jacques after Dr. Beaumont reported his concerning on or around November 24, 2008, and should have taken steps to make sure he did not treat Ms. Jacques anymore and explained the concepts of Transference and Countertransference to Dr. Beaumont so that he understood that the feelings he developed towards Ms. Jacques flowed from the therapy and should not be acted upon.  Exhibit 2, Affidavit of Jerry Blaine, MD, at Pages 2-3.

**REPLY**:   The Court should disregard plaintiff's denial for two reasons.  First, the denial does not raise a genuine issue, or even address, the statements made in No. 46.  Second, as stated in Reply No. 15 above, the Court should disregard plaintiff's denial and the affidavit of Dr. Blaine. First, the plaintiff's denial fails to respond to the specific facts stated in the Statement of Fact, which concern whether in fact Dr. Severin had any knowledge or suspicion that Dr. Beaumont had any inappropriate feelings or intentions toward Ms. Jacques.  The Joint SOF is supported by competent evidence and there is no contrary factual evidence.  Second, the Affidavit of Jerry Blaine, MD, does not say, as asserted in plaintiff's denial, that "Dr. Severin should have been alerted that Dr. Beaumont would have romantic feelings towards Ms. Jacques after Dr. Beaumont reported his concerns on or around November 24, 2008. . . ."  Instead, Dr. Blaine merely states, "It should have been anticipated that Ms. Jacques, given her strong feelings for Dr. Beaumont would persist in trying to see Dr. Beaumont.  Given his limited training and experience in these circumstances any further contact would foreseeably place her at great risk of boundary violations."  This simply acknowledges that the plaintiff was guilty of boundary violations and that the plaintiff might continue to exhibit boundary violations if she continued to be treated by Dr. Beaumont.  Dr. Blaine does not opine that it was foreseeable that Dr. Beaumont would pursue a sexual relationship.  To the extent he does, such an opinion is inadmissible for the reasons stated in the United States' Reply Memorandum at Part III.  Dr. Blaine's affidavit provides no statement of experience, training, or expertise, and no statement of facts that would support an expert opinion on that subject.

47.     While the medical record indicates Dr. Severin was made aware of the boundary-crossing behavior of the plaintiff (Exhibit 4 at USCS0441), there is no evidence to suggest Dr. Severin had any reason to suspect that Dr. Beaumont might cross professional boundaries by engaging in a sexual relationship with Ms. Jacques.  (Exhibit 10 (Severin Decl.).)

**DENIED.**  Dr. Severin should have been alerted that Dr. Beaumont would have romantic feelings towards Ms. Jacques after Dr. Beaumont reported his concerning on or around November 234, 2008, and should have taken steps to make sure he did not treat Ms. Jacques anymore and explained the concepts of Transference and Countertransference to Dr. Beaumont so that he understood that the feeling he developed towards Ms. Jacques flowed from the therapy and should not be acted upon.  Exhibit 2, Affidavit of Jerry Blaine, MD, at Pages 2-3.

**REPLY**:  See Reply No. 46 above.

**Joint Reply to Plaintiff's
Statement of Material Facts
As To Which There Is No Genuine Issue to Be Tried**

The United States and Codman decline to reply to all but one of the Plaintiff's Statement of Material Facts as to Which There Is No Genuine Issue to Be Tried, because no reply is needed under Local Rule 56.1, and because most of the statements are immaterial.  The United States and Codman do reply to Statement No. 24 as follows:

24.   It should be noted that Dr. Beaumont did not make an official note in Ms. Jacques chart each time he saw her, which explains why there are relatively few notes even though Ms. Jacques saw Dr. Beaumont up to 2-3 times per week for counseling and considered him her therapist.  Dr. Beaumont told Ms. Jacques that he did not make a note each time he saw her.  Id. at 858; Deposition of Yanick Jacques, Exhibit 6, Page 43, Line 16-25.

**REPLY**:  The United States and Codman object to both sentences as unsupported by competent evidence.  Out-of-court statements made by Dr. Beaumont to Ms. Jacques are inadmissible hearsay when offered against the United States or Codman.  Fed. R. Ev. 801(a), 801(d)(2), 802.  The out-of-court and unsworn statement of Ms. Jacques in the medical record at Plf's Ex. 4 at p. 858 is also hearsay.  Fed. R. Ev. 802.

**B.**      **Joint Reply To Statement of Facts In Support of the Defendant's Mark Beaumont, M.D's Opposition to the Defendants' United States of America's and Codman Square Health Center, Inc.'s Motions For Summary Judgment (Dkt #56)**

The United States and Codman decline to reply to all but one of the Statement of Facts submitted by the defendant's Mark Beaumont, M.D (Dkt #56), because no reply is needed under Local Rule 56.1, and because most of the statements are immaterial.  The United States and Codman do reply to Statement No. 8 as follows:

8.      There was a pervasive sense of discomfort among primary care providers at Codman regarding treating the fair number of primary care patients who required Behavioral Health services and care.  Id. [Beaumont deposition] at 21:25-22:12. The discomfort stemmed from the fact that primary care providers are not trained or licensed to provide psychiatric care, but there was a shortage of Behavioral Health psychiatrists and counselor's at the facility. Id.  As a result, Dr. Beaumont often saw Ms. Jacques primarily because there was a shortage of providers in the Behavioral Health department. Id.

**REPLY**:  The United States and Codman object to the Statement because it is based on inadmissible hearsay of unidentified "primary care providers at Codman." It is also unreliable. Dr. Beaumont also testified that nobody at Codman's Behavioral Health unit told him that they didn't have the resources to provide mental health care to Ms. Jacques, and that Ms. Jacques never indicated that she had called them and they didn't have time to see her.  Id. at 22:25 – 23:7. Further, Carmen Cruz, who was Ms. Jacques' mental health counselor at Codman, testified that

Codman had sufficient resources and staff to provide mental health care to Ms. Jacques. Defendant Beaumont's Ex. 5 (Cruz deposition) at 57:24 – 58-4.

Respectfully submitted,

UNITED STATES OF AMERICA,

CARMEN M. ORTIZ
United States Attorney

By:   /s/ George B. Henderson, II

George B. Henderson, II
Assistant U.S. Attorney
John J. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02210
(617) 748-3272
george.henderson2@usdoj.gov

CODMAN SQUARE HEALTH CENTER, INC.

/s/ Michael J. Mascis

Michael J. Mascis
Law Offices of Jacqueline L. Allen
One Exchange Place, 5th Floor
Boston, MA 02109
(617) 994-4415
Michael.mascis@cna.com

Dated: July 3, 2014

CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of July, 2014, the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

 /s/ George B. Henderson, II
George B. Henderson, II